UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DARLENE S. BARKER, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:15-cv-262-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|     *Defendant*. | ) | |

## ORDER

Plaintiff Darlene S. Barker ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party moved for a judgment [Docs. 14 & 19] with supporting briefs [Docs. 15 & 20]. For the reasons stated below, (1) Plaintiff's motion for judgment on the pleadings [Doc. 14] shall be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 19] shall be **DENIED**; and (3) the decision of the Commissioner shall be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

**I.    ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her application for DIB in May 2012, alleging disability since July 28, 2010 (Transcript [Doc. 11 ("Tr.")] 10, 162). After Plaintiff's claim was denied initially (Tr. 111-15) and on reconsideration (Tr. 119-20), she requested a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on July 31, 2014, during which Plaintiff was represented by an attorney, and Plaintiff amended her onset date to May 7, 2012 (Tr. 33, 35). The parties agreed that Plaintiff's insured status expired on June 30, 2014 (Tr. 12, 34), making the relevant time

period for consideration from May 7, 2012 through June 30, 2014. The ALJ issued a decision on September 10, 2014, in which the ALJ determined Plaintiff was not under a "disability" as defined in the Social Security Act ("SSA") (Tr. 10-21). On August 4, 2015, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-4). Plaintiff timely filed the instant action [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1959 and was 54 on her date last insured, which is defined as an individual closely approaching advanced age, and 55 on the date of her hearing. (Tr. 19, 34-35). She had a tenth grade education and past work as a sales clerk and small engine assembler at the time of her hearing (Tr. 36, 56-57).

### B. Medical Records

In her Disability Report, Plaintiff alleged disability due to back surgery, numbness in her left hand and left leg, headaches/migraines, depression, and nerves (Tr. 209). Only select portions of Plaintiff's medical records will be addressed within the respective sections of the Court's analysis below, but all relevant records have been reviewed.

### C. Hearing Testimony

The Court has carefully reviewed the transcript of the hearing testimony. While it is not necessary to summarize the testimony herein, the testimony will be addressed as appropriate within the respective sections of the Court's analysis below.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

2

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

3

### B. The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since May 7, 2012, the amended alleged onset date through the date she was last insured, June 30, 2014 (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: post-operative degenerative disc disease of the lumbar spine, sleep apnea, and headaches (Tr. 12-15). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, including Listing 1.04 (Tr. 15). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work with a sit/stand option at about "30 minute-1 hour intervals;" no climbing of ladders, ropes and scaffolds; occasional performance of postural activities; avoidance of concentrated exposure to hazards; and limited to simple, routine, repetitive tasks (Tr. 15-19). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 19). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 19-20). In determining there was other work Plaintiff could perform, the ALJ used the Medical-Vocational guidelines ("Grids") as a framework for decision making and obtained the testimony of a Vocational Expert ("VE") (Tr. 19-20). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time during the relevant period (Tr. 20-21).

### IV. ANALYSIS

Plaintiff alleges that the ALJ erred (1) in mechanically applying the Grids because Plaintiff's 55th birthday was only ten days after her date last insured and there was evidence of significant additional vocational adversities warranting the ALJ's use of this higher age category;

(2) in failing to find Plaintiff is limited to sedentary work and therefore disabled under the Grids; and (3) in failing to properly consider and evaluate all of the evidence, specifically evidence from her treating chiropractor and evidence regarding her obesity under Social Security Ruling 02-01p ("SSR 02-01p").

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of

5

substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Obesity

Addressing Plaintiff's final claim of error first, Plaintiff argues that the ALJ erred in failing to properly consider and evaluate evidence regarding her obesity and the exacerbating effects of obesity on her other physical conditions. Defendant responds that substantial evidence supports the ALJ's evaluation of Plaintiff's impairments despite his failure to explicitly discuss Plaintiff's obesity. Although Plaintiff raises several other claims of error on appeal, her obesity-related claim of error is sufficient for the Court to conclude that the ALJ's decision is not supported by substantial evidence and, therefore, remand is proper.

True, the ALJ need not discuss every aspect of the record or explain every finding at length; rather, the ALJ must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, *4 (6th Cir. Feb. 2, 1999). Under Sentence Four of 42 U.S.C. § 405(g), however, the Court has the power to remand a case to the Commissioner if there is insufficient

6

evidence on the record and additional fact-finding is required. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).[1]

Plaintiff cites SSR 02-01p[2] and regulations at 20 C.F.R., pt. 404, subpt. P, App. 1 § 1.00Q[3] for the proposition that obesity is a genuine medical condition which must be considered in making a disability determination. Plaintiff also asserts SSR 02-01p requires an ALJ to explain how consideration of obesity impacted the ALJ's conclusion on disability. The Commissioner acknowledges the ALJ did not explicitly address obesity in rendering his decision, but argues he was not required to do so under the Sixth Circuit's interpretation of SSR 02-01p.

SSR 02-01p offers guidance on how obesity is to be assessed in conjunction with other impairments. *See Norman v. Astrue,* 694 F. Supp. 2d 738, 741-42 (N.D. Ohio 2010) ("[T]his is more than a requirement that the ALJ mention the fact of obesity in passing . . . ."). There are

---

[1] Under a Sentence Four remand, additional evidence may be taken on rehearing by an ALJ. *Faucher*, 17 F.3d at 174. Sentence Four provides appropriate relief when the evidence on record is insufficient and further fact-finding by an ALJ is necessary. *Id*. at 175-76 ("[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."). There is a second type of remand not at issue here under Sentence Six of 42 U.S.C. § 405(g), whereby the court may order additional evidence to be taken upon a showing that there is (1) material new evidence and (2) good cause such evidence was previously omitted from the record. *Faucher*, 17 F.3d at 174.

[2] SSR 02-01p provides in pertinent part: "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." 2002 WL 34686281, at *6 (Sept. 12, 2002).

[3] Listing 1.00Q (*Effects of obesity*) provides in pertinent part: "The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."

three levels of obesity that correlate with Body Mass Index ("BMI") levels. Level I includes BMIs of 30.0-34.9, Level II includes BMIs of 35.0-39.9, and Level III, which includes BMIs equal to or greater than 40, is considered "'extreme' obesity and represent[s] the greatest risk for developing obesity-related impairments." SSR 02-01p, 2002 WL 34686281, at *2. As recently held by the Sixth Circuit,

> Obesity commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone. The ALJ also must specifically take into account the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, and consider how fatigue may affect the individual's physical and mental ability to sustain work activity—especially in cases involving sleep apnea.

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (internal citations and quotation marks omitted).

As pointed out by Plaintiff, her state agency consultative psychological evaluation report dated October 8, 2012, included the notation that "[h]er physical presentation is remarkable for morbid obesity" (Tr. 306). The agency consultative "all systems" examination dated October 10, 2012, noted Plaintiff was five feet two inches tall and weighed 167 pounds (Tr. 313). Other records of her height and weight measurements are consistent with obesity (for example, height of 62.5 inches while weighing 171 pounds with a BMI of 30.8 on November 26, 2013 and February 25, 2014) (Tr. 546-548). On reconsideration, Plaintiff's obesity was reported to be "non-severe" without further explanation (Tr. 480). The ALJ gave the opinions set forth in the reconsideration "great weight" without mentioning or explaining any obesity considerations (Tr. 19). On the date of her hearing, upon questioning by the ALJ, Plaintiff reported a weight loss and said she currently weighed 149 pounds (Tr. 37).

8

The Commissioner appears to concede that (1) Plaintiff was obese (non-severe) during the relevant period, and (2) that the ALJ did not explicitly discuss obesity in rendering his decision. The Commissioner argues obesity was not a focus of Plaintiff's claim for DIB and remand is not appropriate because the ALJ relied on the opinions of consultative examiners and physicians who considered Plaintiff's obesity in making their assessments. To support this argument, the Commissioner cites to *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006) and *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010), which held SSR 02-01p does not require a particular "mode of analysis," but only requires the ALJ, while analyzing the five steps, to evaluate obesity as one factor affecting the severity of the impairments.

In *Bledsoe*, the Sixth Circuit offered practical assistance in applying SSR 02-01p finding that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "credit[ing] an expert's report that considers obesity." *Bledsoe*, 165 F. App'x at 412; *see also Coldiron*, 391 F. App'x at 443 (applying the same analysis). Both *Coldiron* and *Bledsoe* held that as long as the ALJ relies on opinions of physicians or consultative experts who took the claimant's obesity into account in rendering such opinions, there is no need for the ALJ to detail separately his or her own consideration. *Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x at 412. Unlike in this case, however, the ALJs in both *Coldiron* and *Bledsoe* explicitly discussed the claimants' obesity in their findings of fact. *Coldiron*, 391 F. App'x at 443; *Bledsoe*, 165 F. App'x at 412. In contrast, here the ALJ did not mention Plaintiff's obesity in his discussion of the medical evidence, in his RFC determination, or anywhere else in his decision. This complete omission of any mention of Plaintiff's obesity in the ALJ's decision distinguishes Plaintiff's case from *Coldiron* and *Bledsoe*.

9

There is nothing of record to indicate the ALJ actually considered Plaintiff's obesity in combination with other impairments at all stages of the sequential evaluation as required by the plain language of SSR 02-01p. This omission by the ALJ renders it impossible to tell if he properly considered Plaintiff's obesity during the relevant period. Rule SSR 02-01p requires an ALJ to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations," SSR 02–01p, 2002 WL 34686281, at *7, but the ALJ failed to do so in this case.[4]

The Commissioner also relies on *Nejat v. Comm'r of Soc. Sec.*, which held "[g]iven [claimant's] failure to list obesity in his application and the scant evidence of obesity in the record, the ALJ properly evaluated this alleged condition." 359 F. App'x 574, 577 (6th Cir. 2009) (citing *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996) ("The [ALJ] is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'")). Given that the ALJ asked Plaintiff how much she weighed and even commented on her recent weight loss during the hearing, the ALJ likely was cognizant of Plaintiff's obesity during the relevant time period. Unlike in this case, in *Nejat* the ALJ acknowledged a doctor's diagnosis of obesity in his decision, but adjudged it unreliable in light of the conflicting findings of other physicians. *Id.*

While there is no medical opinion of record that Plaintiff is significantly limited because of her obesity, the complete exclusion of any mention of Plaintiff's obesity makes it impossible

---

[4] The Commissioner also cites *Lyons v. Astrue*, No. 3:10-CV-502, 2012 WL 529587 (E.D. Tenn. Feb 17, 2012), in support of her position that the ALJ did not need to make any explicit analysis or findings regarding Plaintiff's obesity in his decision. In *Lyons*, however, the court noted "that the ALJ discussed parts of the record which contain[ed] findings regarding [the claimant's] obesity and the recommendation that she lose weight" and from this discussion the court was able to conclude "that the ALJ properly assessed the impact of [the claimant's] obese condition on other systems through his assessment of her limitations." 2012 WL 529587, at *4. Here, as previously discussed, the Court is unable to determine whether the ALJ properly assessed the impact of Plaintiff's obesity at the five stages of the sequential evaluation process.

for the Court to tell if the ALJ actually considered this condition in formulating the RFC. Given the complete omission of any mention of Plaintiff's obesity (or how Plaintiff's sleep apnea or other impairments may have been compounded by her obesity) in the ALJ's decision, the Court finds the ALJ erred by failing to consider the impact of this condition as required by SSR 02-01p. *See Shilo*, 600 F. App'x. at 959 ("Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'") (quoting SSR 02-01p, 2002 WL 34686281, at *1). In *Shilo*, a case the Commissioner did not address, the Sixth Circuit noted that while obesity is no longer considered a "listed impairment" by the SSA, the effect of obesity on Plaintiff's ability to work must be specifically considered. *Shilo*, 600 F. App'x at 959. Although the ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a Plaintiff's obesity as argued by the Commissioner, the Sixth Circuit explained the ALJ must do more than merely "mention the fact of obesity in passing." *Id*.

Here, the ALJ did not even mention obesity in passing. The administrative hearing reflects only a brief mention of Plaintiff's weight, which was when the ALJ asked Plaintiff how much she weighed and commented on her recent weight loss. While the ALJ found Plaintiff had severe impairments of degenerative disc disease of the lumbar spine and sleep apnea—conditions affected by obesity—he failed to give any indication he considered Plaintiff's obesity at any stage of the five-step process. The Court concludes that Plaintiff is not requesting a particular mode of analysis; rather, Plaintiff is requesting that the ALJ engage in *any* analysis of Plaintiff's obesity and its potentially aggravating effect on Plaintiff's back and sleep apnea conditions.

Because the ALJ's decision is not supported by substantial evidence as a result of the ALJ's failure to even mention Plaintiff's obesity under the circumstances of this case, remand is

11

necessary so that the Commissioner can provide clarity regarding the issues addressed herein. The Court emphasizes, however, that no particular result is dictated on remand.

### C. Borderline Age and Other Issues

Plaintiff also raised several other issues in her appeal to this Court, including the propriety of the ALJ's consideration of the evidence from Plaintiff's chiropractor. Because such determinations may be impacted by a proper consideration and explanation of Plaintiff's obesity, the Court will not address the other issues raised by the parties with one exception, which is the borderline age issue raised by Plaintiff.

Plaintiff argues the ALJ should have considered the impact of her additional vocational adversities in analyzing her borderline age situation and should have applied the higher age category to find her disabled. The Commissioner agrees that Plaintiff's claim presents a borderline age situation. As a result, the Commissioner further agrees that the ALJ was not to apply the age categories mechanically and was to consider whether to use the older age category after evaluating the overall impact of all the factors of Plaintiff's case under 20 C.F.R. § 404.1563(b). The Commissioner argues, however, that although the ALJ was to consider whether to use the older age category, he was not required to explain his reasoning in his decision. The Commissioner thus argues the ALJ properly used Plaintiff's chronological age without elaboration regarding why he did so.

As the parties appear to agree, nothing requires the ALJ to explicitly discuss a borderline age situation in his decision. *See e.g.*, *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008) (holding 20 C.F.R. § 404.1563(b) "does not impose a *per se* procedural requirement to address borderline age categorization explicitly in every borderline case"). "Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age categorization, lack of an

12

explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence." *Id*. at 400-01.

Given that this matter is being remanded so that the ALJ can properly consider and discuss Plaintiff's obesity, the Court concludes it would be advisable on remand for the ALJ to include an explicit discussion of Plaintiff's borderline age situation even though such an explicit consideration is not required in every case.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, it is **ORDERED** that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 14] is **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits;

2) The Commissioner's motion for summary judgment [Doc. 19] is **DENIED**; and

3) The Commissioner's decision denying benefits is **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

SO ORDERED.

ENTER:

                                              s/ *Susan K. Lee*
                                              SUSAN K. LEE
                                              UNITED STATES MAGISTRATE JUDGE